M. FINE & SONS MANUFACTURING
CO., Inc.,

v.

UNITED STATES.

No. 384–56.

United States Court of Claims.

June 4, 1958.

Sheila M. Roehner, New York City, Simon Gluckman, New York City, on the brief, for plaintiff.

George Willi, III, with whom was Charles K. Rice, Asst. Atty. Gen., James

**764**

P. Garland, Washington, D. C., on the brief, for defendant.

LITTLETON, Judge.

This suit involves a claim for refund of income and excess profits taxes which are alleged to have been erroneously collected from plaintiff for the years and in the amounts as follows:

| | |
|---|---|
| 1943 | $6,104.51 |
| 1944 | 8,461.13 |
| 1945 | 12,917.93 |
| 1946 | 2,497.83 |

While the years in question are admittedly barred by section 322(b) of the Internal Revenue Code because the claims for refund were not filed within three years from the time the returns were filed, or within two years from the time the taxes were paid, plaintiff contends that under the circumstances of its case it is entitled to the relief provided for in section 3801 and section 3807 of the Internal Revenue Code of 1939 (26 U.S.C. §§ 3801 and 3807 (1952 ed.)).

In December 1942 the Paducah Industries Committee, Inc., contributed to the plaintiff a factory and the land on which it stood in Paducah, Kentucky, in furtherance of a project for the employment of a large number of persons in that city. The basis of the factory building to the transferor, Paducah Industries Committee, Inc., at the time of the transfer was $77,876.05. Since its acquisition in 1942 plaintiff has continuously used the Paducah factory for the manufacture of its products for sale in the ordinary course of its trade or business.

In April, 1944, the Vicksburg Chamber of Commerce contributed to the plaintiff a factory in Vicksburg, Mississippi, in furtherance of a like project for the employment of large numbers of persons in the city of Vicksburg. The basis to the transferor, the Vicksburg Chamber of Commerce, at the time of the transfer to plaintiff, was $76,000. Since its acquisition in 1944 the plaintiff continuously used the Vicksburg factory for the manufacture of its products for sale in the ordinary course of business until 1947 when plaintiff sold the Vicksburg factory.

During the years 1943, 1944, 1945 and 1946 plaintiff recorded on its books depreciation on the Paducah and the Vicksburg factories as part of its cost of goods sold, using the transferors' bases as noted above. However, plaintiff did not include in it income and excess profits tax returns any item representing depreciation of the two factories because during those years it was the established policy of the Commissioner of Internal Revenue to deny to taxpayers a right to a deduction for depreciation on property which had been contributed to them by communities. Detroit Edison Co. v. Commissioner, May 1943, 319 U.S. 98, 63 S. Ct. 902, 87 L.Ed. 1286. In the Detroit Edison case the Supreme Court held that extension of facilities of a public utility, which extension had been paid for by its customers and became its property, had no basis to the public utility. Plaintiff herein did include, however, its transferors' bases of the Paducah and Vicksburg factories in computing its equity invested capital for the purposes of determining its excess profits tax credit on its excess profits tax returns. On an examination of its 1943, 1944 and 1945 income and excess profit tax returns in early 1947 by an agent of Internal Revenue, the plaintiff asserted its right to depreciation on the two factories in accordance with its books and records, but that demand was denied by the agent. The agent also disallowed the use by plaintiff of the transferors' bases in computing its equity invested capital and, accordingly, a deficiency in excess profits taxes for those years was assessed against plaintiff. The deficiencies so assessed for the years 1943, 1944 and 1945 were paid in 1947.

In October 1947 the plaintiff sold its Vicksburg factory and reported to Internal Revenue a zero basis for gain.

On May 15, 1950, the Supreme Court decided Brown Shoe Company, Inc., v. Commissioner, 339 U.S. 583, 70 S.Ct. 820, 94 L.Ed. 1081. In that case the Supreme Court held that property contributed by

a community to a taxpayer constituted a contribution to the taxpayer's capital and that accordingly the transferor's basis was the proper basis to the taxpayer under section 113(a) (8) (B) for depreciation, and that under section 718 (a) the taxpayer was entitled to the transferor's basis in computing its equity invested capital.[1]

In November 1950 plaintiff filed a timely claim for refund for the year 1947 asserting its right under section 113(a) (8) (B) to take the transferors' bases for computing (1) gain realized on the sale of the Vicksburg factory in 1947 and (2) depreciation for that year on the Paducah factory. The total claim was in the amount of $6,455.62. This claim for refund was allowed in the amount of $5,729.07 since, in making the allowance and the resulting overassessment, the plaintiff *was required to* reduce its transferors' bases with respect to both factories by amounts representing depreciation for the years 1943, 1944, 1945 and 1946. It will be remembered from the facts stated above that because of the established policy of the defendant and the decision of the Supreme Court in the Detroit Edison Company case, plaintiff

had not been allowed to claim a depreciation deduction for those years in computing its income and excess profits taxes.

In August 1952 the plaintiff filed timely claims for refund for the years 1943, 1944, 1945 and 1946 pursuant to section 3801 and section 3807 of the Internal Revenue Code of 1939.

Section 3801 provides in pertinent part as follows:

"§ 3801. *Mitigation of effect of limitation and other provisions in income tax cases.*

"(a) Definitions. For the purpose of this section—

"(1) Determination. The term 'determination under the income tax laws' means—

\*　　\*　　\*　　\*　　\*　　\*

"(C) A final disposition by the Commissioner of a claim for refund. For the purposes of this section a claim for refund shall be deemed finally disposed of by the Commissioner—

"(i) as to items with respect to which the claim was allowed, upon the date of allowance of refund or credit or upon the date of mailing

---

1. "§ 113. Adjusted basis for determining gain or loss—

"(a) Basis (unadjusted) of property. The basis of property shall be the cost of such property; except that—

\*　　\*　　\*　　\*　　\*

"(8) Property acquired by issuance of stock or as paid-in surplus. If the property was acquired after December 31, 1920, by a corporation—

\*　　\*　　\*　　\*　　\*

"(B) as paid-in surplus or as a contribution to capital, then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made.

\*　　\*　　\*　　\*　　\*

"(b) Adjusted basis. The adjusted basis for determining the gain or loss from the sale or other disposition of property, whenever acquired, shall be the basis determined under subsection (a), adjusted as hereinafter provided."

"§ 114. Basis for depreciation and depletion.

"(a) Basis for depreciation. The basis upon which exhaustion, wear and tear, and obsolescence are to be allowed in respect of any property shall be the adjusted basis provided in section 113(b) for the purpose of determining the gain upon the sale or other disposition of such property."

"§ 718. Equity invested capital.

"(a) Definition. The equity invested capital for any day of any taxable year shall be determined as of the beginning of such day and shall be the sum of the following amounts, reduced as provided in subsection (b)—

\*　　\*　　\*　　\*　　\*

"(2) *Property paid in.* Property (other than money) previously paid in (regardless of the time paid in) for stock, or as paid-in surplus, or as a contribution to capital. Such property shall be included in an amount equal to its basis (unadjusted) for determining loss upon sale or exchange." 26 U.S.C.A. Excess Profits Taxes, § 718(a) (2).

notice of disallowance (by reason of offsetting items) of the claim for refund, and

\* \* \* \* \* \*

"(b) Circumstances of Adjustment. When a determination under the income tax laws—

"(1) Requires the inclusion in gross income of an item which was erroneously included in the gross income of the taxpayer for another taxable year or in the gross income of a related taxpayer; or

\* \* \* \* \* \*

"(5) Determines the basis of property for depletion, exhaustion, wear and tear, or obsolescence, or for gain or loss on a sale or exchange, and in respect of any transaction upon which such basis depends there was an erroneous inclusion in or omission from the gross income of, or an erroneous recognition or nonrecognition of gain or loss to, the taxpayer or any person who acquired title to such property in such transaction and from whom mediately or immediately the taxpayer derived title subsequent to such transaction—

"and, on the date the termination becomes final, correction of the effect of the error is prevented by the operation (whether before, on, or after May 28, 1938) of any provision of the internal-revenue laws other than this section and other than section 3761 (relating to compromises), then the effect of the error shall be corrected by an adjustment made under this section. Such adjustment shall be made only if there is adopted in the determination a position maintained by the Commissioner (in case the amount of the adjustment would be refunded or credited in the same manner as an overpayment under subsection (c)) or by the taxpayer with respect to whom the determination is made (in case the amount of the adjustment would be assessed and collected in the same manner as a deficiency under subsection (c)), which position is inconsistent with the erroneous inclusion, exclusion, omission, allowance, disallowance, recognition, or nonrecognition, as the case may be.

\* \* \*

"(c) Method of adjustment. The adjustment authorized in subsection (b) shall be made by assessing and collecting, or refunding or crediting, the amount thereof, to be ascertained as provided in subsection (d), in the same manner as if it were a deficiency determined by the Commissioner with respect to the taxpayer as to whom the error was made or an overpayment claimed by such taxpayer, as the case may be, for the taxable year with respect to which the error was made, and as if on the date of the determination specified in subsection (b) one year remained before the expiration of the periods of limitation upon assessment or filing claim for refund for such taxable year.

"(d) Ascertainment of amount of adjustment. In computing the amount of an adjustment under this section there shall first be ascertained the tax previously determined for the taxable year with respect to which the error was made. The amount of the tax previously determined shall be the excess of—

"(1) the sum of (A) the amount shown as the tax by the taxpayer upon his return (determined as provided in section 271(b) (1) and (3), if a return was made by the taxpayer and an amount was shown as the tax by the taxpayer thereon, plus (B) the amounts previously assessed (or collected without assessment) as a deficiency over—

"(2) the amount or rebates, as defined in section 271(b) (2), made. There shall then be ascertained the increase or decrease in the tax previously determined which results solely from the correct exclusion, inclusion, allowance, disallowance, recog-

nition, or nonrecognition, of the item, inclusion, deduction, credit, gain or loss, which was the subject of the error. The amount so ascertained (together with any amounts wrongfully collected, as additions to the tax or interest, as a result of such error) shall be the amount of the adjustment under this section."

Plaintiff took the position that the allowance of its claims for refund in 1947, described above, was a "determination" within the meaning of section 3801(a) (1) (C), and that the determination of the Commissioner had created the "circumstances of adjustment" within the meaning of section 3801(b) (1) and (5) for the years 1943, 1944, 1945 and 1946.

Plaintiff's claims for refund for the years 1943, 1944 and 1945, included a claim for refund of excess profits taxes under section 3807 of the Internal Revenue Code of 1939, which provided for adjustments of excess profits taxes for years to which section 3801 was found to be applicable.[2]

In September 1954 defendant disallowed in full plaintiff's claims for refund for the years 1943, 1944, 1945 and 1946.

Under Regulations 111, Sec. 29.22 (a)–5, of the Commissioner plaintiff was prohibited from subtracting from gross

---

2. 3807. *Period of limitations in case of related taxes under chapter 1 and chapter 2.*

"(a) Definitions. As used in this section—

"(1) The term 'tax previously determined' shall have the meaning assigned to such term by section 3801(d).

"(2) The term 'the same taxable year' shall include any taxable year which coincides in whole or in part with the taxable year for which the determination referred to in subsection (b) is made.

"(b) Extension of period of limitations. If—

"(1) under a determination in respect of a tax imposed by chapter 1 or chapter 2, a deficiency is assessed or a credit or refund of an overpayment is allowed, within the period of limitations properly applicable thereto, and

"(2) the application of the law or facts determined in the ascertainment of such deficiency or overpayment to any other such tax of the taxpayer under Chapter 1 or Chapter 2 for the same taxable year would result in an increase or decrease in the amount of the tax previously determined in respect of such other tax, and

"(3) on any date prior to the expiration of one year from the assessment of a deficiency or the allowance of a credit or refund in respect of the tax referred to in paragraph (1), the assessment of a deficiency or the allowance of a credit or refund in respect of the tax referred to in paragraph (2) is prevented (except for the provisions of section 3801 or 734) by the operation (whether before, on, or after the date of enactment of the Revenue Act of 1943) of any law or rule of law other than this section and other than section 3761 (relating to compromises).

then upon such date the increase or decrease in the tax referred to in paragraph (2) shall be considered a deficiency or an overpayment, as the case may be. Such deficiency may be assessed and collected or such overpayment may be credited or refunded as if on the date the deficiency is assessed or the credit or refund allowed in respect of the tax referred to in paragraph (1) one year remained before the expiration of the periods of limitation upon assessment or filing claim for refund in respect of the tax referred to in paragraph (2) for the same taxable year.

"(c) Adjustment unaffected by other items, etc. In determining whether an increase or decrease in the amount of the tax previously determined shall be considered to result from the application of the law or facts under a determination referred to in subsection (b) (1) changes shall be made in items which are the subject of such determination and in items which are affected thereby, and in no others. The amount which may be assessed or allowed as a credit or refund under subsection (b) shall not be diminished by any credit or set-off based upon any item which was not the subject of such determination or affected thereby. Such amount, if paid, shall not be recovered by a claim or suit for refund or suit for erroneous refund based upon any item which was not the subject of such determination or affected thereby, except in connection with a subsequent application of this section." 26 U.S.C.A. Int. Rev.Acts.

receipts depreciation on its factories as an item of the cost of goods sold in determining its gross income on its income tax returns for the years, 1943, 1944, 1945 and 1946 even though plaintiff did so on it books of account. In 1953, however, the Commissioner promulgated Treasury Decision 6028, retroactively eliminating the former express prohibition against the inclusion of depreciation. The Commissioner also issued Revenue Ruling 141, explaining that Treasury Decision 6028 made the regulations on cost of goods sold consistent with the regulations on the valuation of inventories. Inasmuch as plaintiff had consistently on its books treated depreciation as part of its cost of goods sold, plaintiff did not need to secure the consent of the Commissioner before computing his income for tax purposes in accordance with the new Treasury Decision. Section 41 of Internal Revenue Code of 1939 (26 U.S.C.1952 ed. § 41).

Plaintiff urges that the erroneous omission of factory depreciation from the computation of its cost of goods sold resulted in an overstatement of plaintiff's gross income for the years in question so that there was an erroneous inclusion of gross income within the meaning of section 3801 of the Code. Plaintiff also contends that the determination in 1947 of the Commissioner of Internal Revenue that the basis for depreciation for both properties and for gain or loss upon the sale of the Vicksburg factory must be reduced by an amount representing depreciation in years prior to 1947, which depreciation had not been allowed to plaintiff in computing its income and excess profits taxes for those prior years, resulted in an inclusion in gross income in 1947 of "items" of income which had already been erroneously included in gross income in such prior years. Plaintiff argues that this created an inconsistency of position on the part of the Commissioner within the meaning of section 3801(b) (1) of the Code. If plaintiff is correct in claiming the benefits of section 3801 of the Code, an adjustment is also required of plaintiff's excess profits taxes for the years 1943, 1944 and 1945 under Section 3807 of the Code.

That regularly recorded factory depreciation of a manufacturing company is an element or an "item" in the computation of the cost of goods sold to reduce gross receipts and thus arrive at gross income, requires no discussion. Thus, if there is an erroneous disallowance of factory depreciation, gross income is to that extent overstated, or, said another way, there results an erroneous inclusion in gross income of such additional amount for the year in question.

With respect to the Paducah property, acquired by the taxpayer in 1942 and retained by it thereafter, the Commissioner, by allowing taxpayer's claim for refund for 1947, made a final determination within the meaning of section 3801 (a) (1) (C). By that action the Commissioner ruled that the taxpayer was entitled to a deduction on its 1947 income tax return for factory depreciation, but the law and regulations required that the basis for determining such depreciation deduction be reduced by the amount of factory depreciation which the taxpayer should have been but was not allowed to take in the years 1943, 1944, 1945 and 1946. Moultrie Cotton Mills v. United States, Ct.Cl., 151 F.Supp. 482. By reducing in 1947 the taxpayer's basis for determining factory depreciation, the Commissioner in effect required the inclusion in the years representing the remaining life of the building subsequent to 1947 an amount representing the unallowed depreciation deductions for the previous years (1942–1946, inclusive) thus including in gross income for 1947 (and for subsequent years) "an item which was erroneously included in the gross income of the taxpayer" for the earlier taxable years within the meaning of section 3801(b) (1). This is so because, had the Commissioner not reduced the taxpayer's basis for factory depreciation in 1947 by the previously (1942–1946, inclusive) unallowed depreciation, the taxpayer would have had

 

increased depreciation deductions for the years subsequent to 1947. This would result in including in 1947 and in subsequent years (the remaining life of the factory building) amounts of unallowed depreciation already included in previous years and taxed in those years, which is inconsistent with the allowance of the claim for refund. If the Commissioner had desired to act consistently, he could have either (1) allowed depreciation deductions for the years 1942–1946, inclusive, and granted the taxpayer a refund based thereon, or he could have (2) allowed depreciation for 1947 and subsequent years based on the transferor's basis not reduced in 1947 by any unallowed depreciation for the years 1942–1946, inclusive.

With respect to the Vicksburg property which the taxpayer acquired in 1944 and sold in 1947, the Commissioner ruled that the taxpayer's basis for determining and reporting gain or loss on the sale, was the transferor's 1944 basis which basis, however, must be reduced by previously unallowed yearly depreciation from the year of acquisition to the year of sale. The result of this action by the Commissioner was to include in taxpayer's gross income and to tax in 1947 income which, because of the disallowance of any depreciation deductions in prior years, had already been included in taxpayer's gross income and taxed, thus falling within the "Circumstances of Adjustment" provided for in section 3801(b) (1) of the Code. Under the circumstances, it will not be necessary to discuss the contentions of the parties with respect to the possible application of section 3801(b) (5) of the Code.

Since, with respect to both factories the taxpayer is entitled to the benefits of section 3801 of the Code, section 3807 requires that an adjustment also be made regarding the taxpayer's excess profits taxes for the years 1943, 1944 and 1945.

We are unable to agree with defendant's position that the holdings of this court in Gooch Milling & Elevator Co. v. United States, 78 F.Supp. 94, 111 Ct.Cl. 576, and H. T. Hackney Co. v. United States, 78 F.Supp. 101, 111 Ct.Cl. 664, are inapplicable to the present case. Depreciation allowances are as much constituent elements in the determination of the cost of goods sold as the inventories with which the Court was concerned in the Gooch and Hackney cases, and the erroneous disallowance by the Commissioner of one of the constituent elements (depreciation) in determining this plaintiff's cost of goods sold resulted in an erroneous inclusion in gross income herein under the holdings in the above cases.

Defendant's motion for summary judgment is denied. Plaintiff's motion for summary judgment is granted.

Plaintiff is entitled to recover, together with interest provided by law, and judgment will be entered to that effect. The amount of recovery will be determined pursuant to Rule 38(c), 28 U.S.C.

It is so ordered.

JONES, Chief Judge, and LARAMORE, MADDEN and WHITAKER, Judges, concur.